IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| D'ANGELO MARQUEZ JENKINS | ) |
| | ) |
| v. | ) No. 3:09-1010 |
| | ) Judge Trauger/Bryant |
| MONTGOMERY COUNTY | ) |

To: The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

Currently pending in this action under 42 U.S.C. § 1983 are the pro se plaintiff's motions for summary judgment (Docket Entry No. 113) and to add a defendant (Docket Entry No. 106), as well as defendants' motion for summary judgment (Docket Entry No. 121). As further explained below, having considered these motions and the respective responses and related papers, the undersigned Magistrate Judge hereby recommends that plaintiff's motions be DENIED, and that defendants' motion be GRANTED.

### I. Undisputed Facts

Plaintiff D'Angelo M. Jenkins is currently in the custody of the Tennessee Department of Correction ("TDOC") at the Morgan County Correctional Complex in Wartburg, Tennessee. On May 1, 2007, plaintiff was incarcerated at the Montgomery County Jail. (Docket Entry No. 122 at ¶ 1) Plaintiff had previously been on probation after entering a guilty plea to a charge of Facilitation of Aggravated Assault in January 2007, when he was arrested and charged with Facilitation of Aggravated Robbery on May 1, 2007. Id. at ¶ 2; Docket Entry No. 120-3 at 6. On October 3, 2007, plaintiff admitted his probation

violation and a formal Revocation Order was entered, reinstating his original four-year sentence. The Revocation Order reflects a box checked "TDOC," indicating that plaintiff was to serve the remainder of his original sentence in a state prison, not in county jail, a workhouse, or community corrections. (Docket Entry No. 115-1 at 5) However, as a special condition or instruction of the Revocation Order, it is noted that plaintiff was "to serve [his sentence] in Montgomery County Jail or other agreed institution." Id. On or about July 29, 2008, plaintiff pled guilty to the charges of Facilitation of Aggravated Robbery and Possession of a Weapon During the Commission of a Felony, and was sentenced to 7 years, 6 months incarceration with TDOC and an additional 2 years of probation. Id. at 16.

On December 22, 2008, plaintiff was transferred from the Montgomery County Jail to the custody of TDOC. (Docket Entry No. 122 at ¶ 10) Plaintiff had previously been scheduled to appear for a hearing before the Tennessee Board of Probation and Parole at the Montgomery County Jail on this same day. (Docket Entry No. 21-2) Defendant Jodi Weatherbee was the Montgomery County Jail's liaison to the circuit court of Montgomery County, and was the official who coordinated transfers of jail inmates into the state prison system, in cooperation with TDOC. (Docket Entry No. 120-2 at ¶ 2) Defendant Weatherbee selected plaintiff for transfer to TDOC. Id. at ¶ 3. The procedure for such transfers was as follows: TDOC notified the jail when it had beds available and could accept inmates from the jail; pursuant to jail procedure, defendant Weatherbee then determined the priority of inmates for transfer based upon considerations including length of the inmate's TDOC sentence, length of time the inmate had already been housed in the jail, the inmate's influence on jail security including any disciplinary history of the inmate, and any special medical considerations particular to the inmate. Id. at ¶ 2. At the time of his transfer,

plaintiff had been an inmate in the jail for nineteen months and had pled guilty to the Facilitation of Aggravated Robbery and Possession of a Weapon During the Commission of a Felony charges, for which he had been sentenced to a lengthy period of incarceration with TDOC, which sentence he was to begin serving upon the expiration of his sentence for the 2007 conviction for Facilitation of Aggravated Assault. (Docket Entry No. 122 at ¶ 19)

## II. Conclusions of Law

### A. Cross-Motions for Summary Judgment

Both plaintiff and defendants have moved for summary judgment on plaintiff's retaliation claim, noting the absence of any genuine factual issue for trial. As further explained below, the undersigned agrees that there are no genuine issues of material fact, and finds that the law is on defendants' side, requiring summary dismissal of the claim against them.

#### 1. Standard of Review

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that summary judgment should be rendered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In determining whether the movant has met its burden, the court must view the evidence in the light most favorable to the non-moving party. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1356 (1986). In order to defeat the motion, the non-moving party may not merely rest on conclusory allegations contained in the complaint, Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986), but must affirmatively demonstrate "sufficient evidence favoring the non-

moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).

## 2. Defendants' Motion

Defendants' initial argument in support of their motion is that plaintiff is a "three-striker," in that he has had three previous lawsuits dismissed as frivolous, malicious, or for failure to state a claim. Consequently, defendants argue that plaintiff's pauper status is improper and this case is therefore subject to dismissal unless the full filing fee is paid forthwith. The applicable provision of the pauper statute, 28 U.S.C. § 1915(g), states that "[i]n no event shall a prisoner bring a civil action ... under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." However, at the time that plaintiff filed the instant case, on October 20, 2008, he had only two "strikes" -- prior dismissals on the basis of frivolity in case numbers 3:08-0073 (on January 25, 2008) and 3:08-0825 (on August 28, 2008). Because plaintiff did not have his third action against the Montgomery County Jail (case number 3:08-0145) dismissed until November 2, 2008, for failure to state a claim, § 1915(g) does not operate to deny plaintiff pauper status in this case filed October 20, 2008.

Plaintiff's primary contention in this case is that his First Amendment rights were violated when he was transferred from the Montgomery County Jail to the custody of TDOC on the morning of a scheduled parole hearing, in retaliation for his prior litigation against his jailors. To state a viable claim for First Amendment retaliation, plaintiff must allege that (1) he engaged in constitutionally protected conduct; (2) an adverse action was

4

taken against him, such that would deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) there is a causal connection between his protected conduct and the adverse action against him -- "that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). It is undisputed that plaintiff's litigation activity against the Montgomery County Jail was protected conduct. Defendants argue that plaintiff cannot satisfy the element of adverse action, because he made many filings subsequent to his transfer from the jail and was thus plainly not deterred from engaging in such constitutionally protected conduct. However, this argument misses the mark. The degree to which plaintiff himself was deterred from such activities, or not, is immaterial to the establishment of a viable retaliation claim. Rather, it is the degree to which "a person of ordinary firmness" is so deterred which must be established in analyzing the viability of such a claim. The fact that plaintiff may have been inordinately firm in seeking to vindicate the rights allegedly violated is not held against him in this analysis. Bell v. Johnson, 308 F.3d 594, 606 (6th Cir. 2002) (citing Thaddeus-X, 175 F.3d at 398)).

Nonetheless, it is definitively established in the cases that prisoners have no constitutional right to be incarcerated in any particular facility, and that a transfer to a different facility is not ordinarily deemed a sufficiently adverse action to support a retaliation claim. E.g., Ward v. Dyke, 58 F.3d 271, 274-75 (6th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215 (1976)); Smith v. Baugh, 2007 WL 3179315, at *4 (M.D. Tenn. Oct. 26, 2007) (citing cases). The Sixth Circuit has made an exception to this general rule, noting that prisoners who suffer certain foreseeable consequences which inhibit their ability to access the courts may claim the requisite adverse action from their transfer to a different facility. Siggers-El v.

5

Barlow, 412 F.3d 693, 701-02 (6th Cir. 2005). Specifically, the transfer in Siggers-El resulted in the inmate's loss of a high paying prison job that he needed to pay his attorney, and also made it more difficult for the attorney to continue representing him because he was moved further away from the attorney. However, the exception drawn in Siggers-El has been viewed by this court as limited to the facts of that case:

> It is nonetheless true that, in a limited, factually specific situation, a prison transfer may cause sufficient limiting consequences to render the transfer an adverse action. *See Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005). However, the only adverse consequences noted in *Siggers-El* were those that were directly related to the inmate's ability to retain and have access to an attorney for a legal challenge to his criminal conviction. These consequences were so directly related to the inmate's access to the courts that they constituted actions that "would deter a person of ordinary firmness from engaging in protected conduct."

Smith v. Baugh, 2007 WL 3179315, at *5. Finding that the plaintiff had made no such showing of foreseeable, limiting consequences, Judge Campbell dismissed the retaliation claim in that case for lack of an adverse action. Id. at *6.

Likewise, plaintiff in the case at bar has made no showing of any consequences of his transfer to TDOC, foreseeable by defendants, that would stand to inhibit his First Amendment right of access to the courts.[1] Notwithstanding plaintiff's own post-transfer litigation activity, it simply does not stand to reason that a transfer out of county jail and into the custody of the state, even on the morning of a parole hearing, would deter a person of ordinary firmness from continuing to litigate against the county jail officers, who would no

---

[1] Plaintiff has notified the court of his intent to address the potential consequence that his sentence was effectively lengthened by the transfer, through a petition for writ of habeas corpus. (Docket Entry No. 105)

6

longer have any authority or even opportunity to burden the inmate's exercise of First Amendment rights. As the foreseeable consequences of the transfer in this case have not been shown to be sufficiently adverse to deter a person of ordinary firmness from engaging in plaintiff's protected conduct, summary judgment should be entered in favor of defendants on this retaliation claim.

In addition, should the Court disagree with the foregoing analysis and find an adverse action here, the undersigned would conclude that, even viewing the record in the light most favorable to plaintiff, there is no genuine issue for trial as to whether a causal connection exists between plaintiff's protected conduct and the transfer at issue. It is plaintiff's burden to prove that the exercise of his rights was a substantial or motivating factor in the defendants' alleged retaliatory conduct. Smith v. Baugh, 2007 WL 3179315, at *4 (citing Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). "Conclusory allegations of a retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial." Id. (citing Murray v. Unknown Evert, 84 Fed. Appx. 553, 556 (6th Cir. Dec. 8, 2003)). See also Birdo v. Lewis, 1996 WL 132148 (6th Cir. Mar. 21, 1996); Howard v. Kovach, 2010 WL 3062846 (S.D. Ohio Aug. 4, 2010).

As defendants point out, at the time of the allegedly retaliatory transfer on December 22, 2008, all three previous case filings in this court had been dismissed (two without having even been served on defendant Montgomery County Jail), and they had not yet been served with process in the instant litigation. Nor had defendants Weatherbee and Armstrong been named as defendants or otherwise implicated in plaintiff's prior filings. Moreover, in response to defendants' assertion and affidavit testimony that they were not aware of plaintiff's prior lawsuits against the Montgomery County Jail, plaintiff states that his

"previous lawsuits were common knowledge to all deputies at the Montgomery County Jail, he did not sue individuals he sued the whole Jail." (Docket Entry No. 126 at 3) Referring to his assertion that the sentencing judge in Montgomery County criminal court had ordered that plaintiff's sentence be served entirely in the Montgomery County Jail or other agreed institution, plaintiff in a supplement to his complaint stated that he "thought that you couldn't go against an order from the courts so I'm sure that [the transfer] was done out of harassment and retaliation for filing a 1983 civil suit." (Docket Entry No. 21 at 2) These statements certainly qualify as conclusory (and therefore insufficient) allegations that defendants' actions, in furtherance of an institutional campaign to harass him, were motivated by retaliatory animus.

However, plaintiff has alleged that he spoke with defendant Weatherbee at a court date in Montgomery County on April 3, 2009, and asked her why she ordered his transfer to TDOC on the morning of his parole hearing, to which defendant Weatherbee allegedly responded "she had no choice because Lt. Armstrong instructed her to do it ... [because plaintiff] was causing too many problems for the jail." (Docket Entry No. 26 at 2; Docket Entry No. 80 at 2) This sworn statement, combined with the temporal proximity between plaintiff's litigation against the Montgomery County Jail, which was dismissed on November 2, 2008 (Case No. 3:08-0145, Docket Entry No. 58), and his transfer on December 22, 2008, provides some support for a causal connection. However, a very similar presentation was rejected by the district court and Sixth Circuit in <u>Smith v. Campbell</u>, 250 F.3d 1032 (6th Cir. 2001). In <u>Smith</u>, the inmate alleged that on the same day that he had been gathering documentation to file a grievance and his federal lawsuit, the defendant/appellee, Winkler, told him "that the prison could transfer Smith and say it was based on institutional

8

needs," and the inmate's transfer was accomplished mere days later. The district court in that case ruled that the jailors' proof of a nonretaliatory reason for the transfer was sufficient, and that, "aside from what it termed 'ambiguous' statements by Winkler, the plaintiff had failed to show that the filing of grievances played any role in the decision to transfer." Id. at 1038. In affirming, the Sixth Circuit found as follows:

> Other than the comments by Winkler, Smith offers no evidence to demonstrate that his activities in filing grievances played any role in his transfer, let alone a substantial role. Winkler's comments do not demonstrate a causal connection between his filing of grievances and the decision to transfer him because it is uncontroverted that she was not the decisionmaker in this case. Consequently, her statements cannot be taken as evidence of a retaliatory motive. ... Aside from Winkler's statements, the temporal proximity between Smith filing his grievances and the decision to transfer him provides some circumstantial support for a causal connection. However, the Court concludes that this evidence alone is not sufficient to meet Smith's burden to show that the filing of grievances was a substantial or motivating factor for his transfer.

Id.

Here, plaintiff has alleged in his sworn, amended complaint that defendant Weatherbee followed defendant Armstrong's orders in selecting plaintiff for transfer, and that Armstrong issued that order because plaintiff was "causing too many problems for the jail." (Docket Entry No. 26 at 2) Defendants have offered countervailing affidavit testimony that the transfer was accomplished pursuant to standing procedure in cooperation with TDOC, based on factors including the length of plaintiff's TDOC sentence, the length of time plaintiff had already been housed in the jail, plaintiff's influence on security at the jail, and any special medical considerations. It was further brought to light in defendants' answer to the complaint that plaintiff had pled guilty to a new felony charge, facilitation of aggravated

9

robbery, on July 29, 2008, and was sentenced on that date to a seven year, six month period of incarceration within TDOC. (Docket Entry No. 72 at 2-3 & Exh. A) Both defendants further testified in their affidavits that they did not know of plaintiff's parole hearing, and that they were not the officers to whom notice of plaintiff's parole hearing would have been sent. (Docket Entry No. 120-1 and -2) Finally, their testimony reflects that defendant Weatherbee, as the jail's liaison to the Montgomery County Circuit Court, was the sole decisionmaker in the selection of inmates to transfer to TDOC, and did in fact select plaintiff for transfer. Defendant Armstrong, as Lieutenant of the Montgomery County Jail, was notified of plaintiff's selection for transfer but was not involved in the decisionmaking process. Id. The record thus reflects -- aside from temporal proximity between the dismissal of plaintiff's prior lawsuit and the date of his transfer -- a remark allegedly made more than three months after the transfer during a chance meeting between plaintiff and Weatherbee in county court on an unrelated matter, the substance of which is inconsistent with the affidavit testimony of Weatherbee and Armstrong in support of their motion for summary judgment. Unlike in Smith, the remark in question here was not made contemporaneously with plaintiff's transfer, but was made by the decisionmaker, Weatherbee, although the substance of the remark purportedly disclaimed that decisionmaking authority in the case of plaintiff's transfer and indicated that Armstrong made the decision because of unidentified "problems" that plaintiff was causing at the jail. The undersigned finds that this remark is simply too tenuous a bridge to support plaintiff's otherwise conclusory allegations of a retaliatory motive for his transfer, and even combined with the element of temporal proximity, fails to create a genuine issue of material fact for trial.

B. Motion to Add a Defendant

Following the undersigned's recommendation that plaintiff's claim of unlawful opening of legal mail be dismissed for failure to name a proper defendant, the District Court granted plaintiff leave to amend with regard to this claim, adding three John Doe defendants whose identities were to be learned in discovery. (Docket Entry No. 53) With his pending motion to add Deputy Wright as a defendant (Docket Entry No. 106), plaintiff seeks to name Deputy Wright because he learned in discovery that Wright was the officer who signed for the piece of certified mail delivered to plaintiff on July 2, 2008. However, as early as his first filing in this case (and the internal grievance that preceded it) plaintiff knew and asserted that Deputy Wright witnessed this piece of mail being opened outside of plaintiff's presence, and that the piece of mail was delivered to him by Deputy Wright. (Docket Entry No. 1 at 6; Docket Entry No. 115-1 at 1) There were allegedly other deputies in the mailroom with Deputy Wright when this piece of mail was unlawfully opened (Docket Entry No. 1 at 6), but plaintiff has not moved to include any other individuals as defendants in place of the other two John Doe defendants.

Leave to amend a complaint should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), but only in the absence of sufficient reason to deny such leave, such as, e.g., undue delay. Foman v. Davis, 371 U.S. 178, 182 (1962). Plaintiff attempts to add Deputy Wright as a defendant by motion filed April 9, 2010, a year and a half after the filing of his original complaint, without yet having alleged that Deputy Wright actually opened the certified letter on July 2, 2008, and based solely on his more recent discovery that Wright signed for the letter at its delivery to the jail, in addition to the previously alleged facts that Wright witnessed its opening and delivered the opened letter to plaintiff. The undersigned respectfully recommends that leave to amend be denied for the reason that the attempt to

11

name Deputy Wright was delayed unduly. Moreover, while plaintiff has alleged a series of unauthorized openings of his legal mail outside of his presence, Deputy Wright is only implicated in this one incident on July 2, 2008. In short, the attempt to bring in Deputy Wright based on the circumstantial support offered by Wright's signing for the delivery of one piece of mail is, in the undersigned's view, too little and too late to salvage this claim. The undersigned therefore recommends that the motion to add a defendant (Docket Entry No. 106) be denied, and that plaintiff's complaint be dismissed.

### III. Recommendation

In light of the foregoing, the Magistrate Judge hereby recommends that plaintiff's motions to add a defendant (Docket Entry No. 106) and for summary judgment (Docket Entry No. 113) be DENIED, and that defendants' motion for summary judgment (Docket Entry No. 121) be GRANTED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 5th day of November, 2010.

                                        s/ John S. Bryant
                                        JOHN S. BRYANT
                                        UNITED STATES MAGISTRATE JUDGE